**ELECTRONICALLY FILED**
COURT OF COMMON PLEAS
Friday, January 9, 2026 12:17:09 AM
CASE NUMBER: 2026 CV 00137 Docket ID: 534843029
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
GENERAL DIVISION

| | | |
|---|---|---|
| COPPERFIELD LLC | : | CASE NO. |
| 3150 REPUBLIC BLVD. NORTH, | : | |
| SUITE 3 | : | |
| TOLEDO, OHIO 43615 | : | JUDGE |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CITY OF VANDALIA | : | **COMPLAINT FOR DECLARATORY** |
| 333 JAMES BOHANAN DRIVE | : | **JUDGMENT, COMPENSATORY** |
| VANDALIA, OHIO 45377 | : | **DAMAGES, ATTORNEY'S FEES, AND** |
| | : | **COSTS PURSUANT TO 42 U.S.C. 1983,** |
| AND | : | **THE U. S. AND OHIO CONSITUTIONS** |
| | : | |
| CITY OF VANDALIA CITY COUNCIL | : | |
| 333 JAMES BOHANAN DRIVE | : | |
| VANDALIA, OHIO 45377 | : | |
| | : | |
| Defendants. | : | |

---

Now comes the Plaintiff Copperfield LLC ("Plaintiff" or "Copperfield"), by and through

its undersigned counsel, and for its Complaint against Defendants, City of Vandalia and the City

of Vandalia City Council (the "City"), states and avers as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.  Copperfield is a limited liability company organized and operated under the laws of

    the State of Ohio with its statutory agent and principal place of business located at

    3150 Republic Boulevard, North, Suite 3, Toledo, Lucas County, Ohio 43615.

2.  The City, situated entirely in Montgomery County, Ohio, is a municipal corporation duly organized and existing under the laws of Ohio, and it is a political subdivision of the State of Ohio.

3.  Pursuant to the City's Charter, the City operates under a Council-Manager form of government with seven citizens serving as Councilmembers.[1] One of the seven Councilmembers is the Mayor, who is separately elected pursuant to Section 3-2 of the City Charter.

4.  This Court has subject matter jurisdiction over this action pursuant to Ohio Const., art. IV, § 4, and R.C. 2721.03.

5.  This Court has personal jurisdiction over the City because it is a municipal corporation located entirely in Montgomery County, Ohio.

6.  This Court is the proper venue for this case as real property at issue, generally known by the address of 3330 Mulberry Road (Parcel ID B02 00624 0001) (the "Property"), is in Vandalia, Ohio, and within Montgomery County.

## COMPLAINT FOR DECLARATORY JUDGMENT

### FACTS COMMON TO ALL CLAIMS

7.  Copperfield is the owner of the Property, which consists of approximately 11.36 +/- acres.

8.  The Property is currently zoned Agricultural ("A").

---

[1] Vandalia Charter, Section 2-1.

9.  The Property is flanked by residential property zoned RSF-3 to the north,[2] Interstate I-70 to the south, agricultural property to the east, and the Airport Access Road to the west.

10. The City's 2020 Comprehensive Plan (the "Comprehensive Plan") adopted by City Council designates the Property as being appropriate for medium density residential development, as reflected in the Comprehensive Plan's Future Land Use Map attached hereto as Exhibit A.

11. The 2020 Comprehensive Plan defines "Medium Density Residential" as a "development [which] provides a variety of complementary single family and multifamily homes including homes on small lots, duplexes, townhomes, and flats." See Comprehensive Plan, p. 56, attached hereto as Exhibit B.

12. On Tuesday, July 15, 2025, Copperfield submitted an Application for Public Hearing for Zoning Action or Code Amendment with the City to change and rezone the Property from Agricultural to Planned Unit Development (the "Application") which would permit the Property to be developed into eighty-seven (87) single-family townhomes (the "Development"). A copy of the Application is attached hereto as Exhibit C.

13. The proposed Development is consistent with the City's Comprehensive Plan and supported by City Staff.

14. The Application was assigned Planning Commission Case No. PC 25-0011.

---

[2] Pursuant to Section 1218.02 (c) of the Vandalia Planning and Zoning Code (the "VPZC"), the Residential Single-Family District 3 ("RDF-3") provides for primarily single-family detached residential developments in a moderate to high-density environment.

15. City Staff reviewed and recommended approval of the Application. A copy of City Staff's report is attached as Exhibit D.

16. On August 26, 2025, the City's Planning Commission held a public hearing and voted unanimously to recommend that the Application for the Planned Unit Development ("PUD") be approved. See Exhibit E reflecting the Planning Commission's Recommendation.

17. The Application was then discussed by City Council in a public study/work session on September 2, 2025.

18. The first public hearing before City Council regarding the Application was held on September 15, 2025.

19. The second public hearing before City Council regarding the Application was held on October 6, 2025 (the "Final Hearing").

20. At the Final Hearing, Copperfield presented a Traffic Generation Summary for Residential Development prepared by Robert Matko, P.E., P.S., PTOE, which established that increased traffic from the Development would have a minimal impact on surrounding roadway network. A copy of this report is attached as Exhibit F.

21. City Staff presented no evidence to rebut Matko's conclusion that the Development would have minimal impact on the surrounding roadway network.

22. At the Final Hearing, Copperfield presented additional testimony that it was not economically viable to develop the Property into single-family homes,[3] which is a permitted use in an agriculturally-zoned district in the City.

---

[3] Pursuant to Section 1244.02 of the VPZC, a "single-family" dwelling is "Housing located on individual lots, physically unconnected with any adjacent homes, occupied by a single housekeeping unit."

23. Pursuant to Section 1214.07 (C)(4) of the VPZC, City Council is required to conduct a public hearing consistent with Chapter 1214 of the VPZC when making its final decision regarding the approval or denial of a proposed PUD. At the public hearing, Council is required to apply and consider the review standards set forth in Section 1214.07(d) of the VPZC. A copy of Section 1214.07 of the VPZC is attached hereto as Exhibit G.

24. Pursuant to Section 1214.08 (c)(5) of the VPZC, City Council is required to apply and consider the review standards for preliminary plans for PUDs, which standards are set forth in Section 1214.08 (d)(1)(A) through (M). A copy of Section 1214.08 is attached hereto as Exhibit H.

25. At the Final Hearing, City Council voted to deny the rezoning of the Property from Agricultural to PUD without consideration or discussion of the criteria Council is required to review pursuant to Sections 1214.07 and 1214.08 of the VPZC. A copy of the denial letter is attached at Exhibit I.

26. Without Application approval and rezoning of the Property, Copperfield is denied an economically viable and reasonable use of its Property.

27. Without Application approval and rezoning of the Property, the City is failing to substantially advance a legitimate governmental interest.

28. The City's denial of the Application and refusal to rezone the Property was not based on legitimate public health, safety, or welfare concerns, but was arbitrary, capricious, and politically motivated.

29. Plaintiff has exhausted all administrative remedies available to challenge the denial of the Application.

30. City Council has demonstrated that all property owners are not treated equally in the City. By Ordinance No. 25-29, adopted by Council on December 1, 2025, Council approved the rezoning of property located at 7848 South Brown School Road (the "Brown School Road Development") from Agricultural to PUD for the purpose of residential development.[4] The Brown School Road Development approved by City Council is less than five miles from Plaintiff's Property.

31. The evidence demonstrates that Copperfield was denied due process and a fair hearing in that certain Councilmembers had decided the matter before the Final Hearing. The pre-prepared statements/conclusions of two Councilmembers are attached hereto as Exhibits J and K.[5]

## COUNT ONE

### Inverse Condemnation and Regulatory Taking under the Ohio Constitution (Ohio Constitution, Article I, Section 19)

32. Copperfield incorporates the preceding paragraphs as if fully restated herein.

33. Copperfield has a protected property interest in the Property.

34. Enforcement of the regulations of the Agricultural Zoning District renders the Property economically unviable.

35. Copperfield has suffered damages as a result of City's actions.

36. The City's actions constitute a taking of the Property without compensation, contrary to Article I, Section 19 of the Ohio Constitution.

---

[4] The video of the December 1, 2025, City Council meeting can be viewed at this website: https://vandalia.granicus.com/player/clip/311?view_id=5&redirect=true.

[5] Councilmember Cynthia Doogan's pre-prepared statement is Exhibit J, and Councilmember Michael Blakesly's pre-prepared statement is Exhibit J.

## COUNT TWO

**Federal Takings Claim (U.S. Const. Amend. V & XIV; 42 U.S.C. §1983)**

37. Copperfield incorporates the preceding paragraphs as if fully restated herein.

38. The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the deprivation of life, liberty, or property without due process of law and further prohibits the taking of private property without just compensation.

39. The Development proposed by Copperfield is consistent with the City's Comprehensive Plan, which Comprehensive Plan represents the City's own determination of the appropriate land use and development in the City.

40. The City, acting under color of state law, has engaged in acts that constitute a taking of Copperfield's Property by denying the Application and enforcing land use restrictions that have rendered the Property economically unviable.

41. The City's actions fail to substantially advance a legitimate governmental purpose or bear a rational relationship to any legitimate public interest in the health, safety, and welfare of City residents.

42. The City's actions have interfered with Copperfield's distinct investment-backed expectations and have caused damages.

43. The City has failed and refused to provide Plaintiff with just compensation for the taking of its property.

44. Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to declaratory relief and to recover just compensation, together with reasonable attorney's fees and costs as permitted under 42 U.S.C. §1988.

## COUNT THREE

**Violation of Substantive Due Process (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

45. Copperfield incorporates the preceding paragraphs as if fully restated herein.

46. Copperfield has rights to substantive due process secured by the Fifth and Fourteenth Amendments of the United States Constitution, the Ohio Constitution and the Civil Rights Act, Section 1983 *et seq.,* and has a recognizable property or liberty interest in the Property secured by the same.

47. City Council was required to follow the appropriate guidelines and criteria prescribed by the VPZC when determining whether to approve the Application in this case, but if failed to do so.

48. The decision of City Council to deny the Application was not based on the evidence presented at the hearing.

49. Copperfield's Application is consistent with the City's Comprehensive Plan, which represents the City's own determination of appropriate land use and development in the City.

50. The City, acting under color of state law, arbitrarily and capriciously denied Copperfield's Application and imposed restrictions unrelated to legitimate land use concerns, thereby depriving Copperfield of its property rights without substantive due process.

51. City Council's denial of the Application was arbitrary, capricious, and not rationally related to a legitimate governmental interest and constitutes an abuse of governmental power.

52. As such, the denial of the Application goes too far and has rendered the Property economically unviable to such an extent that it amounts to a taking of Copperfield's Property without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT FOUR

**Violation of Substantive Due Process (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

53. Copperfield incorporates the preceding paragraphs as if fully restated herein.

54. Copperfield was denied due process, in contravention of the Fourteenth Amendment of the United States Constitution, because certain Councilmembers had already made their decision before the Final Hearing on Copperfield's Application. See Exhibits J & K attached hereto and incorporated herein by reference.

55. As a result of the City's denial of Copperfield's due process, Copperfield has suffered damages, and will continue to suffer damages.

## COUNT FIVE

**Violation of Substantive Due Process (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

56. Copperfield incorporates the preceding paragraphs as if fully restated herein.

57. Copperfield states that the VPZC is unclear as to the procedural requirements and administrative procedures related to zoning text and map amendments.

58. Parts of the VPZC read as if applications for zoning text and/or map amendments are quasi-judicial proceedings that require public hearing, the presentation of evidence, and a consideration of all relevant factors prescribed by the VPZC.[6] However, the actual proceedings create the impression that the public hearings are merely hearings on legislative enactments.

---

[6] See VPZC Section 1214.02.

59. Quasi-judicial proceedings are subject to administrative appeals pursuant to R.C. Chapter 2506, but legislative determinations are not.

60. Because the VPZC is unclear and vague as to the procedural and administrative requirements where zoning text and map amendments are concerned, the applicable sections of the VPZC are void for vagueness.

**COUNT SIX**

**Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (U.S. Const. Amend. XIV)**

61. Copperfield incorporates the preceding paragraphs as if fully restated herein.

62. Copperfield has been subjected to unequal treatment by the City acting under the color of law in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that:

63. City Council has recently voted to approve zoning changes for properties within the City consistent with the City's Comprehensive Land Use Plan. This includes, but is not limited to, Council's approval of the rezoning of an agriculturally-zoned property to a residential PUD.[7]

64. Copperfield's proposed Development is consistent with the City's Comprehensive Plan.

65. Copperfield possesses protected property and liberty interests in the Property.

66. Copperfield has been deprived of those property and liberty interests by discriminatory treatment in comparison with similarly situated persons/entities.

67. There is no rational basis for the City's discriminatory treatment of Copperfield.

---

[7] The property recently rezoned from agricultural to residential PUD is less than five miles from Copperfield's Property.

68. Copperfield has suffered damages, and will continue to suffer damages, due to the City's unequal treatment of persons/entities who seek to change their zoning districts.

## COUNT SEVEN

### Declaratory Judgment (R.C. 2723.03)

69. Copperfield incorporates the preceding paragraphs as if fully restated herein.

70. Section 2721.03 of the Ohio Revised Code provides that any person whose rights are affected by a municipal ordinance may have the construction or validity of the ordinance determined and obtain a declaration of rights under it.

71. Copperfield seeks a declaration of its rights to rezoning of its Property under the VPZC.

72. Copperfield further requests a declaration that the City's actions in denying the Application are unlawful, unconstitutional, and void.

**WHEREFORE**, Plaintiff Copperfield prays for judgment as follows:

1. That the denial of Copperfield's Application be vacated, set aside, and declared null and void;

2. That the City Council be ordered to grant Copperfield's Application;

3. For compensatory damages in an amount to be determined at trial, but believed to be in excess of Twenty-Five Thousand Dollars ($25,000.00) in due to violations of Copperfield's constitutional protections under the United States Constitution and the Ohio Constitution;

4. For all injunctive relief necessary to ensure compliance with the Court's rulings and findings and to permit Copperfield to use its Property in accordance with its Application;

5. For declaratory judgment of Copperfield's rights to develop the Property;

6. For all costs of this action, including reasonable attorney's fees and expert fees, as provided by 42 U.S.C. § 1988; and

7. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.


By: */s/ Christopher R. Conard*
    Christopher R. Conard (0039751)
    Robert D. Ballinger (0096676)
    Alexander W. Cloonan (0095690)
    33 W. First Street, Suite 600
    Dayton, OH  45402
    Phone:  937-223-8177
    Fax:  937-223-6705
    E-mail:  conard@coollaw.com
    E-mail:  ballinger@coollaw.com
    E-mail:  cloonan@coollaw.com

*Attorneys for Plaintiff*
*Copperfield LLC*

020780\00501\4935-1670-6679.9



FIGURE 3-17: Future Land Use

Low Density Residential
Medium Density Residential
Neighborhood Commercial
Community Commercial
Office / Light Industrial
Industrial / Innovation
Civic / Institutional
Parks & Open Space
National Road Corridor
Downtown
Miller / Benchwood Area

EXHIBIT
A

Vandalia Comprehensive Plan 55

Creating the Framework

## LOW DENSITY RESIDENTIAL

Low density residential development provides a variety of single family homes (detached and attached) of various house and lot sizes. Neighborhoods should provide housing options for those of all ages and family types with access to nearby parks and commercial amenities.

- **Architecture.** A range of architectural styles should be promoted with quality, natural materials. Houses should face the street with garages and accessory buildings being secondary features.
- **Amenities and Open space.** Residents should have walkable access to a variety of park and recreational amenities as well as neighborhood commercial businesses that serve the daily needs of residents. Development should preserve and leverage environmentally sensitive areas such as wetlands and tree cover.
- **Connectivity.** Facilities for safely and comfortably walking, biking, and driving should be provided for people of all ages and abilities. Neighborhoods should seamlessly connect to other neighborhoods as well as nearby parks, schools, and neighborhood commercial businesses. Cul-de-sacs should be avoided due to the constraints on connectivity.

## MEDIUM DENSITY RESIDENTIAL

Medium density residential development provides a variety of complementary single family and multi-family homes including homes on small lots, duplexes, townhomes, and flats. Neighborhoods should provide numerous shared amenities and housing of different sizes and configurations for all lifestyles.

- **Architecture.** A range of architectural styles should be promoted with quality, natural materials and facades that break down large massing. Buildings should be oriented to the street with parking located in the rear or screened from view.
- **Amenities and Open space.** Residents should have walkable access to a variety of shared amenities such as green space, recreational paths, community buildings, and neighborhood commercial businesses that serve the daily needs of residents. Development should preserve and leverage environmentally sensitive areas such as wetlands and tree cover.
- **Connectivity.** Neighborhoods should be highly walkable and bikeable with short blocks and front entrances on the street. In addition to private parking, on-street parking and shared parking should be provided and accessed from the rear or side of building.








EXHIBIT
B



# Development & Engineering Services

## Application for Public Hearing for Zoning Action or Code Amendment

**Complete this page and follow the directions on page 2 for each of the following requests:**

☐ Rezoning   ☐ Cond Use   ☑ Planned Unit Dev   ☐ Similar Use Det   ☐ Site Plan Rev/Mod

Applicant Name: DDC Management

Mailing Address: 3601 Rigby Rd. Suite 300, Miamisburg, OH 45342

Phone Number: 937-401-3844

E-mail Address: ryan.reed@ddcmgmt.com

Owner Name**: Copperfield LLC

Mailing Address: 3150 Republic Blvd. N. Unit 3

Toledo, OH 43615

Phone Number:

| OFFICE USE ONLY |
|---|
| Filing Date _____ |
| Hearing Date _____ |
| Case No. _____ |

**\*\* If Applicant is other than owner, written consent of owner is required.**

## Location of Use.

Street Address: Mulberry Road, Vandalia, OH   (PPN B02 00624 0001)

(north, south, east, west) side of Mulberry Road _____, 0 _____ feet

(north, south, east, west) from the intersection of Hedgestone Drive

Subdivision: _____ Lot No.: _____ Section: _____

## Case Description.

Present Zoning District: agricultural               Total Acres: 11.36

Requested Zoning District (for rezoning requests only): PUD

Description of the existing use of property: agricultural

Description of proposed use of property: Single Family Attached

Reason for Zoning Request or Code Amendment: To allow for a single family attached development

_Signature_   6-30-2025

Applicant/Owner      Date

Zoning Administrator      Date

| FILING FEES (office use only): |  |
|---|---|
| Site Plan Review/Modification ($106.00) | |
| Similar Use Determination ($106.00) | |
| Conditional Use ($318.00) | |
| Planned Unit Development ($531.00) | |
| Planned Unit Dev. Amendment ($265.00) | |
| Rezoning ($531.00) | |
| Receipt No. | |

**EXHIBIT C**

Created 12/2023; Updated 12/20/2024                    o 1 of 4

**Follow The Directions Below for Application Submittal.**

**Code Amendment:** *Complete page 1 and include 7 copies of any other supplemental materials that may assist the board in making a decision.*

**Rezoning:** *Complete page 1 and include 7 copies of a plan that outlines the subject parcels and illustrates the surrounding zoning districts.*

**Conditional Use:** *Complete page 1 and 2 and include 7 copies of a site plan drawn to scale, which includes the following; shape and dimensions of the lot(s), buildings and accessory structures, parking and loading areas, traffic circulation, open spaces, landscaping, signage, utilities, refuse and service areas and a rendering of the proposed building(s).*

**Planned Unit Development:** *Complete pages 1, 3 and, 4. Include 7 copies of the supporting documents listed on pages 3 and/or 4.*

*\*Any zoning approval granted by the City is given solely with respect to compliance with the City of Vandalia Zoning Code. The property may be subject to private restrictions including but not limited to recorded Covenants, Restrictions or Declarations that may be applicable notwithstanding any City zoning approval and may require separate approval not involving the City. Applicant is solely responsible for compliance with any such private restrictions*

## COMPLETE THIS SECTION FOR CONDITIONAL USE REQUESTS.

Please provide a narrative statement evaluating the effects on adjoining property; the effect of such elements as traffic, noise, glare, odor, fumes and vibration on adjoining property; a discussion of the general compatibility with adjacent and other properties in the district.

The proposed infrastructure improvements and residential development complement the existing land use and support the future land use character of the surrounding neighborhood by continuing the residential subdivision (Copperfield) to the North. The reclassification would be desirable to the surrounding community for the following reasons: (1) it aligns with Vandalia's Comprehensive Plan and it's Future Land Use plan, (2) the proposed residential community will bring a quality product at an affordable price point to support the increasing job growth the surrounding area is experiencing, and (3) the proposed residential community will provide buyers a product with a "maintenance-free living" lifestyle allowing them to spend more time within the city and downtown destinations. Applicant requests a waiver to requirement 1234/09(f) along Mulberry, which would require road widening, curbs, gutters and sidewalks as part of the Thoroughfare plan. In evaluation of the existing surrounding community (Copperfield), these improvements have not been installed. Additionally, the location of this project does not provide connectivity to adjacent properties or developments where these improvements are in place.

Is the proposed use in harmony with the general purposes and intent of the Zoning Code and does the proposed use comply with the general guidelines and regulations for the district in which it is located?

The proposed use is in harmony with the City of Vandalia Comprehensive Plan.

What will be the hours of operation for the proposed use? N/A

## COMPLETE THIS SECTION FOR A PLANNED UNIT DEVELOPMENT (PUD).

**Underlying Zoning:** _11.36_ Acres of _agricultural_ ; _____ Acres of _____;
_____ Acres of _____ = Total Acreage: _11.36_ .

Is an amendment of the underlying zoing part of this application? _X_ YES _____ NO
If yes, please explain. _____
_____

**Phasing:**
Number _1_ Start Date _____; Finish Date _____; Total Acres _11.36_
Uses _single family attached_
Amenities _dog park, pond, entry signage_
Number_____ Start Date _____; Finish Date _____; Total Acres _____
Uses _____
Amenities _____
Number_____ Start Date _____; Finish Date _____; Total Acres _____
Uses _____
Amenities _____
Number_____ Start Date _____; Finish Date _____; Total Acres _____
Uses _____
Amenities _____

**Density:**
Residential: Maximum number of dwelling units proposed _87_ / _11.36_ acres.
Non-Residential: Maximum number of dwelling units proposed _____ / _____ acres.

**Streets:**
Public streets proposed: _approx. 1800_ linear feet. Minimum lighting _____ f.c.
Private streets proposed: _____ linear feet. Minimum lighting _____ f.c.

**Open Space (for residential developments only):**
Acreage to be dedicated as City parkland: _____ Acres.
Common open space held by Homeowner's Association: _approx. 3.6_ Acres.
Impervious surface coverage: _approx 4.5_ Acres / _11.36_ Total Acres = _0.40_ %

### *Please include the following supporting documents with requests for PUD approval:*

1. **Vicinity Map** *(1" = 1000' minimum scale)*
2. **Existing Characteristics Map** *(proposed plan boundary line, existing property lines, underlying zoning, right of way, easements, public properties, elevation contours, national flood insurance floodways and flood fringe and federal jurisdictional wetlands)*
3. **Proposed Plan/Plat** *(proposed plan boundary line, phasing boundaries and designations, streets (public or private), bikeways, sidewalks, zoning, water, sanitary sewer, and storm drainage improvements, residential buildings, non-residential buildings, setbacks, parking, loading, dumpster locations, signs and recreational or other amenities)*
4. **Preliminary Grading Plan** *(any area cleared, structure demolished and erosion/sedimentation control structures installed)*
5. **Preliminary Landscaping Plan** *(mounding, screening and generic plant materials)*
6. **Development Statement** *(discussion of he following; compatibility with surroundings, access, public utilities provided, ownership, access and provision of maintenance for common areas such as open spaces parking & other amenities)*
7. **Conceptual Elevations** *(building materials and design principals to be applied to the development)*
8. **Proposed covenants, deed restrictions and association bylaws**

## COMPLETE THIS SECTION FOR A PUD MAJOR OR MINOR AMENDMENT

Turn in the following items for a complete application.

**A.** **SITE PLAN-- Must submit five copies**

The applicant/owner shall provide a site plan drawn to scale which shows the following, *if applicable*:

1. Property/Boundary lines
2. Exterior lot dimensions
3. Size and location of all existing structures
4. Location and size of proposed new construction
5. Setbacks of all structures from property boundary lines.
6. Distance between structures.
7. Show loction of any and all streets, alleys, right-of-ways and easementes that are contiguous to the property requesting the Variance.
8. Open space, landscaping, signage
9. Photos or graphics that illustrate proposed project

**B.** **LIST OF PROPERTY OWNERS**

Provide a list of all property owners (as recorded in the Montgomery County Auditor's office) within 200 ft. of the boundaries of the property being considered.

*Example*:

| Property Address | Parcel I.D. # | Owner Name | Owner Mailing |
|---|---|---|---|
| 123 Clubhouse Way | B02 00000 0000 | Carol Smith | 124 Green Way |
| 345 Brown School Rd. | B02 11111 1111 | Fred Jones | Vandalia, OH 45377 345 Brown School Rd. |

**C.** **LETTER OF JUSTIFICATION**

The applicant shall submit a letter of justification that describes the request for the Major Amendment. The letter shall describe why the amendment is necessary and how it relates to the approved plan and/or Comprehensive Plan.

PROPERTIES WITHIN 200 FEET OF SUBJECT PARCEL

| Property Address | Parcel Number | Owner Name | Mailing Address |
|---|---|---|---|
| 3425 Mulberry Rd., Dayton, OH 45414 | B02 00624 0002 | Elva J. Daniels and Vivian N. Daniels, Trustees | 3425 Mulberry Rd., Dayton, OH 45414 |
| Mulberry Rd., Dayton, OH 45414 | B02 00624 0003 | Elva J. Daniels and Vivian N. Daniels, Trustees | 3425 Mulberry Rd., Dayton, OH 45414 |
| 3430 Mulberry Rd., Dayton, OH 45414 | B02 00624 0006 | Allison C. Whitenack and Beau Moore | 3430 Mulberry Rd., Dayton, OH 45414 |
| National Road, Dayton, OH 45414 | B02 00624 0008 | Dayton Power and Light Co. | P.O. Box 1247, Dayton, OH 45401 |
| Greystone Circle, Dayton, OH 45414 | B02 01125 0028 | Copperfield Property Homeowner's Association | P.O. Box 53787, Cincinnati, OH 45253 |
| Hedgestone Drive, Dayton, OH 45414 | B02 01125 0029 | Copperfield Property Homeowner's Association | P.O. Box 53787, Cincinnati, OH 45253 |
| Hedgestone Drive, Dayton, OH 45414 | B02 01125 0030 | Copperfield Property Homeowner's Association | P.O. Box 53787, Cincinnati, OH 45253 |
| 1140 Landsdale Court, Dayton, OH 45414 | B02 01125 0042 | Faye Nuneza and Stefan Yoder | 1140 Landsdale Court, Dayton, OH 45414 |
| 1148 Landsdale Court, Dayton, OH 45414 | B02 01125 0043 | Patrick H. Matlock and Cheryl Matlock | 1148 Landsdale Court, Dayton, OH 45414 |
| 1154 Landsdale Court, Dayton, OH 45414 | B02 01125 0044 | Steve Fogle | 1154 Landsdale Court, Dayton, OH 45414 |
| 1160 Landsdale Court, Dayton, OH 45414 | B02 01125 0045 | Bo R. Schneider and Kathryn E. Schneider | 1160 Landsdale Court, Dayton, OH 45414 |
| 1166 Landsdale Court, Dayton, OH 45414 | B02 01125 0046 | Alfonso Machuca, Jr. and Amy J. Machuca | 1166 Landsdale Court, Dayton, OH 45414 |
| 1800 Hedgestone Drive, Dayton, OH 45414 | B02 01125 0047 | Michael C. Bautista and Maria Johanna Bautista | 1800 Hedgestone Drive, Dayton, OH 45414 |
| 1206 Foxcroft Court, Dayton, OH 45414 | B02 01125 0048 | Peter J. Bardonaro and Marissa Bardonaro | 1206 Foxcroft Court, Dayton, OH 45414 |
| 1212 Foxcroft Court, Dayton, OH 45414 | B02 01125 0049 | Meghann A. Pruitt and Matthew R. Pruitt | 1212 Foxcroft Court, Dayton, OH 45414 |
| 1218 Foxcroft Court, Dayton, OH 45414 | B02 01125 0050 | Phillip J. Taylor and Maria Vasquez | 1218 Foxcroft Court, Dayton, OH 45414 |
| 1224 Foxcroft Court, Dayton, OH 45414 | B02 01125 0051 | Julia Vasquez and Rene Vasquez | 1224 Foxcroft Court, Dayton, OH 45414 |
| 1230 Foxcroft Court, Dayton, OH 45414 | B02 01125 0052 | Jason R. Hutchison and Leslie B. Hutchison | 1230 Foxcroft Court, Dayton, OH 45414 |
| 1238 Foxcroft Court, Dayton, OH 45414 | B02 01125 0053 | Donnie D. Bush and Kathy J. Bush | 1238 Foxcroft Court, Dayton, OH 45414 |

Planning Commission August 26, 2025           1st Council Meeting September 15, 2025
Study Session September 2, 2025              2nd Council Meeting October 6, 2025

# MEMORANDUM

**TO:**         Planning Commission
**FROM:**    Michael Hammes, AICP, City Planner
**DATE:**     August 20, 2025
**SUBJECT:**  PC 25-0011 – Planned Unit Development – 3330 Mulberry Road

## General Information

| | |
|---|---|
| Owner(s): | Copperfield LLC<br>3150 Republic Blvd. N. Unit 3<br>Toledo, Ohio 43615 |
| Applicant: | DDC Management<br>3601 Rigby Rd. Suite 300<br>Miamisburg, Ohio 45342 |
| Existing Zoning: | Agriculture (A) |
| Proposed Zoning: | Planned Unit Development (PUD) |
| Location: | 3330 Mulberry Road |
| Parcel(s): | B02 00624 0001 |
| Acreage: | 11.36 acres +/- |
| Related Case(s): | PC 22-03[1] |
| Requested Action: | Recommendation of Approval |
| Exhibits: | 1 – Application<br>2 – Proposed Preliminary Plan<br>3 – Proposed Home Elevations<br>4 – Letters of Justification |

---

[1] On July 18, 2022, City Council did not approve Ordinance 22-13 (PC22-03), which proposed a Planned Unit Development Preliminary Plan and corresponding map amendment for Copperfield Towns.

PC 25-0011 – PUD – 3330 Mulberry Road – Copperfield Towns             ge 1 of 10



EXHIBIT
D

Planning Commission August 26, 2025          1st Council Meeting September 15, 2025
Study Session September 2, 2025              2nd Council Meeting October 6, 2025

## Application Background

DDC Management requests a change of zoning as previously established by the Zoning Ordinance of the City of Vandalia. The request involves one parcel totaling 11.36 acres +/- located at the southeast corner of Mulberry Road and Peters Pike in the City of Vandalia. As proposed, the subject property would be rezoned from the A- Agricultural zoning district to a Residential Planned Unit Development. The property is owned by Copperfield LLC.

DDC Management seeks to develop the site as a residential subdivision. As proposed, the development would feature 87 units across 34 lots[2]. This subdivision would be called Copperfield Towns.

The applicant has proposed a Planned Unit Development for the site. A letter of justification has been submitted detailing their rationale for the proposed PUD. The approval of a PUD for this development would lock the site into the proposed layout, forcing the applicant (or their successor) to comply with the plan as approved by Council.[3]

The applicant seeks approval of both the Planned Unit Development itself, with development standards set forth herein, and a preliminary plan.

## Current Zoning / Use

The site is in the A – Agriculture zoning district and is currently being used as a crop field. The property is currently vacant. The Future Land Use Map calls for this site to be used as Medium Density Residential. The current access from the site comes from Mulberry Road, which in turn connects to Peters Pike, Hedgestone Drive, Ashbury Farms Drive, and North Dixie Drive.

## Surrounding Zoning / Uses

The surrounding area is a blend of agriculture and residential uses. The property borders Interstate I-70 and Airport Access Road.

Surrounding zoning districts are as follows:

| Direction | District |
| --- | --- |
| North | RSF-3 – Residential Single-Family |
| South | Interstate I-70 |
| East | A - Agriculture |
| West | Airport Access Road |

---

[2] 33 lots are buildable.
[3] See also Zoning Code Section 1214.08. No development can commence unless and until a Final Plan is approved by Council, with said Final Plan conforming to the Preliminary Plan approved as part of this application.

Planning Commission August 26, 2025          1st Council Meeting September 15, 2025
Study Session September 2, 2025              2nd Council Meeting October 6, 2025

## Proposed Structures

The applicant has provided sample elevations for the types of townhomes intended for this development. The proposal includes constructing 87 owner-occupied attached town home units in both two-unit buildings or three-unit configurations on the site. Each unit will have a garage and will be served with a paved driveway.

One monument sign is proposed at the north end of the development, as shown. The sign would be required to meet the requirements of Chapter 1236 – Sign Standards.

The proposed plan calls for open space along the south and west ends of the site. A 50-foot boundary setback is proposed along the northern and eastern edges of the development, adjacent to Mulberry Road and the neighboring property.

## Land Use Density

The proposed Land Use Density for the site is based on the number of dwelling units per acre. In this instance, with 87 dwelling units proposed on 11.36 acres, we have a gross density of 7.65 Dwelling Units per acre.

Section 1222.06(a)(3) of the Vandalia Zoning Code requires that Planned Unit Developments shall not exceed 12 dwelling units per acre for multi-family developments.

## Proposed Roadways

The development would be served by three new streets, as shown. These roadways would connect to Mulberry Road. All proposed roadways will meet the City's standards for roadway design and construction.

## Comprehensive Plan

The 2020 Comprehensive Plan designates this site as Medium Density Residential.[4] This designation is shared with all properties south of Mulberry Road that are zoned Agriculture.

"Medium Density Residential development should provide a variety of complementary single-family and multi-family homes including homes on small lots, duplexes, townhomes, and flats."[5]

The style of development proposed – townhome-style multi-family structures – is one of several types of home specifically intended for the Medium Density Residential designation applicable to this property. As such, Staff finds that the proposed development would be consistent with the Comprehensive Plan.

---

[4] City of Vandalia Comprehensive Plan, Page 55.
[5] City of Vandalia Comprehensive Plan, Page 56

Planning Commission August 26, 2025          1ˢᵗ Council Meeting September 15, 2025
Study Session September 2, 2025               2ⁿᵈ Council Meeting October 6, 2025

<u>**Covenants and Restrictions**</u>

The development will be served by a Homeowner's Association operating under a set of covenants and restrictions. The reserve lots and other common areas will be maintained by this Homeowner's Association.

<u>**Development Standards[6]**</u>

The Planned Unit Development district is intended to allow for a flexible development that does not strictly adhere to the standards of one district. In this instance, the applicant proposes a development with narrow lots featuring attached townhomes.

The proposed site is divided into 33 buildable lots with each lot containing 2-3 dwelling units. There is an area reserved for passive open space, outdoor recreation, or stormwater detention.

The following development standards will apply to the proposed PUD:

1. **Permitted Uses**
   Permitted Uses shall be limited to the following:
   a. Multi-Family Residential Housing (Lots 1-32 and 34 only)
   b. Passive Parks, Open Space, Outdoor Recreation, and Natural Areas (Lot 33 only)
   c. Accessory Uses as permitted in the RSF-1 District[7]

2. **Site Development Standards**

| SITE DEVELOPMENT STANDARDS -- PC 25-0011 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lots | Minimum Lot Area (Square Feet) | Minimum Lot Frontage (Feet) | Maximum Impervious Surface Coverage | Minimum Setbacks (Feet) | | | Maximum Building Height (Feet) |
| | | | | Front Yard | Side Yard (Each Side) | Rear Yard | |
| 1-32, and 34 | 4,900 | 54 | 60% | 25 | 15 | 10 | 25 |
| Lot 33 | 5,000 | 40 | N/A | N/A | N/A | N/A | N/A |

[6] All Lot Numbers and Designations (i.e., Lot 24, etc.), as well as preliminary road designations (i.e., Foxcroft Court, etc.) shall refer to the approved Preliminary Development Plan for the Copperfield Towns Subdivision, unless otherwise noted.
[7] Vandalia Zoning Code, Section 1224.01(d)(8)A.

Planning Commission August 26, 2025                    1ˢᵗ Council Meeting September 15, 2025
Study Session September 2, 2025                         2ⁿᵈ Council Meeting October 6, 2025

### 3. Architectural Standards

The following architectural standards shall apply to all residential dwellings constructed on Lots 1-32 and 34, inclusive, except as otherwise noted herein.

    a.  No two Dwelling Units with the same elevation and exterior color package shall be permitted on either side of each other and directly across the street for each other.

    b.  In all other instances, and for all other aspects relating to architectural standards, shall follow the requirements put forth in City Code 1228.03 – "Architectural Standards for Multi-Family Dwellings".

### 4. Other Standards

    a.  All residential buildings shall be set back a minimum of 50 feet from the boundary of the PUD.

    b.  Standards not otherwise listed as part of the Development Standards for this Planned Unit Development shall conform to the standards of the RFF Residential Four-Family district in City Code 1226.04.

    c.  Improvements to the Mulberry Road right-of-way shall be installed as required by Section 1234.09(f) "Responsibility for Thoroughfare Improvements", under the supervision of the Director of Public Service.

    d.  A vegetative screen shall be maintained along Airport Access Road to increase sound dampening.

### Phasing Plan / Timeline

If approved, the applicant intends to construct this development in one phase. Primary construction would begin in Spring 2026, with a 9-month construction period planned. Once horizontal construction is complete, dwellings would be constructed as sales allow.

Planning Commission August 26, 2025          1ˢᵗ Council Meeting September 15, 2025
Study Session September 2, 2025              2ⁿᵈ Council Meeting October 6, 2025

## Review and Recommendation

**Planned Unit Development District Review Criteria**

Recommendations and decisions on Planned Unit Development applications shall be based on consideration of the following review criteria. Not all criteria may be applicable in each case, and each case shall be determined on its own facts.[8]

1. The proposed amendment will further the purposes of this overall code;

**Staff Comment:** Staff feels that the proposed Planned Unit Development furthers the purposes of the code.

2. The proposed amendment and proposed uses are consistent with the City's adopted plans, goals and policies;

**Staff Comment:** Staff feels that the proposed Planned Unit Development, in its current form, is consistent with the City's goals and policies.

3. The proposed amendment is necessary or desirable because of changing conditions, new planning concepts, or other social or economic conditions;

**Staff Comment:** Staff feels that the proposed Planned Unit Development is necessary to accommodate the style of home intended for this site. The townhome-style structures proposed would not be feasible in a standard zoning district.

4. The public facilities such as transportation, utilities, and other required public services will be adequate to serve the proposed use;

**Staff Comment:** Staff feels that the site has adequate access to transportation, utilities, and other required public services.

5. The proposed rezoning will not adversely affect the economic viability of existing developed and vacant land within the City;

**Staff Comment:** Given the location and nature of the proposed development, Staff feels that the proposed development complies with this review criterion.

---

[8] Vandalia Zoning Code, Section 1214.07(d) – Zoning Map Amendment Review Criteria

Planning Commission August 26, 2025          1st Council Meeting September 15, 2025
Study Session September 2, 2025               2nd Council Meeting October 6, 2025

6. The proposed amendment is not likely to result in significant adverse impacts upon the natural environment, including air, water, noise, storm water management, wildlife, and vegetation, or such impacts will be substantially mitigated;

**Staff Comment:** Given the proposed preservation of green space as part of this development, Staff feels that the proposed Planned Unit Development complies with this review criteria.

7. The proposed amendment will not constitute an instance where special treatment is given to a particular property or property owner that would not be applicable to a similar property, under the same circumstances;

**Staff Comment:** Staff feels that the proposed zoning is justified on the merits, and does not constitute special treatment.

8. The proposed amendment would correct an error in the application of this Planning and Zoning Code as applied to the subject property.

**Staff Comment:** Staff feels that this criterion does not apply.

**PUD Preliminary Plan Review Criteria**

The Planning Commission shall not recommend in favor of, and City Council shall not approve, a preliminary plan for a planned unit development unless each body respectively finds that the preliminary plan does the following: [9]

A. The proposed development is consistent with the Official Thoroughfare Plan, the Comprehensive Plan and other applicable plans and policies of the City of Vandalia;

**Staff Comment:** Staff feels that the proposed Planned Unit Development, in its current form, is consistent with the City's goals and policies.

B. The proposed development could be substantially completed within the period of time specified in the schedule of development submitted by the applicant;

**Staff Comment:** Staff feels that the proposed schedule of development is reasonable and achievable.

---

[9] Vandalia Zoning Code, Section 1214.08(d) – Planned Unit Development Review Criteria

Planning Commission August 26, 2025        1st Council Meeting September 15, 2025
Study Session September 2, 2025        2nd Council Meeting October 6, 2025

C. The proposed development provides accessibility to public roads that are adequate to carry the traffic that shall be imposed upon them by the proposed development; that the number of vehicular access points to public roads from high traffic generating uses are minimized to limit the number traffic conflict points; and that the streets and driveways on the site of the proposed development shall be adequate to serve the users of the proposed development;

**Staff Comment:** Staff feels that the design of the proposed development meets this criterion.

D. The proposed development shall not impose an undue burden on public services such as utilities, fire, school and police protection;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

E. The proposed development contains such proposed covenants, easements and other provisions relating to the proposed development standards as reasonably may be required for the public health, safety and welfare;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

F. The proposed development shall include adequate open space, landscaping, screening and other improvements;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

G. The location and arrangement of signs, structures, parking and loading areas, material/waste storage, walks, lighting and related facilities shall be compatible with existing and future uses both within and adjoining the proposed development;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion. A minimum 30-inch landscaped buffer, using mulch or live plantings, shall be maintained around the base of the sign on all sides.

H. The proposed development shall preserve natural features such as watercourses, trees and rock outcrops, to the degree possible, so that they can enhance the overall design of the PUD;

**Staff Comment:** Noting the areas designated as open space and the addition of the wildflower prairie area, particularly to the west, Staff feels that the proposed development complies with this review criterion.

Planning Commission August 26, 2025        1st Council Meeting September 15, 2025
Study Session September 2, 2025          2nd Council Meeting October 6, 2025

I.    The proposed development is designed to take advantage of the existing land contours in order to provide satisfactory road gradients and suitable building lots and to facilitate the provision of proposed services;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

J.    The proposed development shall not create excessive additional requirements for public facilities and services at public cost;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

K.    The proposed development shall not involve uses, activities, layout and building designs that are detrimental to the use of both the proposed facilities and/or nearby properties by reason of excessive traffic, noise or vibration, storm water flooding, air or water emissions, objectionable glare or lack of proper regard for privacy;

**Staff Comment:** Noting that the only proposed uses are residential in character or passive open space uses, Staff feels that the proposed development complies with this review criterion.

L.    The proposed development has buildings designed with sufficient architectural variety and exterior surface complexity but including elements which serve to visually unify the development;

**Staff Comment:** Given the variety of home designs and their thematic similarities, Staff feels that the proposed development complies with this review criterion.

M.    The proposed development has minimized the size of paved areas or provided adequate visual relief through the use of landscaped islands while providing adequate parking.

**Staff Comment:** As no standalone parking lots or vehicular use areas are proposed, Staff feels that this review criterion does not apply.

Planning Commission August 26, 2025            1st Council Meeting September 15, 2025
Study Session September 2, 2025                2nd Council Meeting October 6, 2025

## Recommendation

Having reviewed the proposed Planned Unit Development district, the proposed Preliminary Plan, and the application materials provided, staff finds that the application meets the relevant criteria for approval.

Accordingly, staff recommends that Planning Commission issue a recommendation of **approval** for the establishment of the proposed Planned Unit Development, identified on a preliminary basis as Copperfield Towns, with the development standards as set forth herein.

Staff further recommends that Planning Commission issue a recommendation of **approval** for the proposed preliminary plan.

The recommendation of the Planning Commission on both items will be forwarded to the September 2, 2025, Study Session for Council review.

Planning Commission August 26, 2025          1ˢᵗ Council Meeting September 15, 2025
Study Session September 2, 2025                     2ⁿᵈ Council Meeting October 6, 2025

# MEMORANDUM

**TO**:             Kurt Althouse, City Manager
**FROM**:       Michael Hammes, AICP, City Planner
**DATE**:         August 27, 2025
**SUBJECT**:    PC 25-0011 – Planned Unit Development – 3330 Mulberry Road

## General Information

| | |
|---|---|
| Owner(s): | Copperfield LLC<br>3150 Republic Blvd. N. Unit 3<br>Toledo, Ohio 43615 |
| Applicant: | DDC Management<br>3601 Rigby Rd. Suite 300<br>Miamisburg, Ohio 45342 |
| Existing Zoning: | Agriculture (A) |
| Proposed Zoning: | Planned Unit Development (PUD) |
| Location: | 3330 Mulberry Road |
| Parcel(s): | B02 00624 0001 |
| Acreage: | 11.36 acres +/- |
| Related Case(s): | PC 22-03[1] |
| Requested Action: | Approval |
| Exhibits: | 1 – Application<br>2 – Proposed Preliminary Plan<br>3 – Proposed Home Elevations<br>4 – Letters of Justification |

---

[1] On July 18, 2022, City Council did not approve Ordinance 22-13 (PC22-03), which proposed a Planned Unit Development Preliminary Plan and corresponding map amendment for Copperfield Towns.

PC 25-0011 – PUD – 3330 Mulberry Road – Copperfield Towns              Page 1 of 11



EXHIBIT

E

Planning Commission August 26, 2025        1st Council Meeting September 15, 2025
Study Session September 2, 2025            2nd Council Meeting October 6, 2025

## Application Background

DDC Management requests a change of zoning as previously established by the Zoning Ordinance of the City of Vandalia. The request involves one parcel totaling 11.36 acres +/- located at the southeast corner of Mulberry Road and Peters Pike in the City of Vandalia. As proposed, the subject property would be rezoned from the A- Agricultural zoning district to a Residential Planned Unit Development. The property is owned by Copperfield LLC.

DDC Management seeks to develop the site as a residential subdivision. As proposed, the development would feature 87 units across 34 lots[2]. This subdivision would be called Copperfield Towns.

The applicant has proposed a Planned Unit Development for the site. A letter of justification has been submitted detailing their rationale for the proposed PUD. The approval of a PUD for this development would lock the site into the proposed layout, forcing the applicant (or their successor) to comply with the plan as approved by Council.[3]

The applicant seeks approval of both the Planned Unit Development itself, with development standards set forth herein, and a preliminary plan.

### Current Zoning / Use

The site is in the A – Agriculture zoning district and is currently being used as a crop field. The property is currently vacant. The Future Land Use Map calls for this site to be used as Medium Density Residential. The current access from the site comes from Mulberry Road, which in turn connects to Peters Pike, Hedgestone Drive, Ashbury Farms Drive, and North Dixie Road.

### Surrounding Zoning / Uses

The surrounding area is a blend of agriculture and residential uses. The property borders Interstate I-70 and Airport Access Road.

Surrounding zoning districts are as follows:

| Direction | District |
|-----------|----------|
| North | RSF-3 – Residential Single-Family |
| South | Interstate I-70 |
| East | A - Agriculture |
| West | Airport Access Road |

---

[2] 33 lots are buildable.
[3] See also Zoning Code Section 1214.08. No development can commence unless and until a Final Plan is approved by Council, with said Final Plan conforming to the Preliminary Plan approved as part of this application.

Planning Commission August 26, 2025          1st Council Meeting September 15, 2025
Study Session September 2, 2025          2nd Council Meeting October 6, 2025

## Proposed Structures

The applicant has provided sample elevations for the types of townhomes intended for this development. The proposal includes constructing 87 owner-occupied attached town home units in both two-unit buildings or three-unit configurations on the site. Each unit will have a garage and will be served with a paved driveway.

One monument sign is proposed at the north end of the development, as shown. The sign would be required to meet the requirements of Chapter 1236 – Sign Standards.

The proposed plan calls for open space along the south and west ends of the site. A 50-foot boundary setback is proposed along the northern and eastern edges of the development, adjacent to Mulberry Road and the neighboring property.

## Land Use Density

The proposed Land Use Density for the site is based on the number of dwelling units per acre. In this instance, with 87 dwelling units proposed on 11.36 acres, we have a gross density of 7.65 Dwelling Units per acre.

Section 1222.06(a)(3) of the Vandalia Zoning Code requires that Planned Unit Developments shall not exceed 12 dwelling units per acre for multi-family developments.

## Proposed Roadways

The development would be served by three new streets, as shown. These roadways would connect to Mulberry Road. All proposed roadways will meet the City's standards for roadway design and construction.

## Comprehensive Plan

The 2020 Comprehensive Plan designates this site as Medium Density Residential.[4] This designation is shared with all properties south of Mulberry Road that are zoned Agriculture.

"Medium Density Residential development should provide a variety of complementary single-family and multi-family homes including homes on small lots, duplexes, townhomes, and flats."[5]

The style of development proposed – townhome-style multi-family structures – is one of several types of home specifically intended for the Medium Density Residential designation applicable to this property. As such, Staff finds that the proposed development would be consistent with the Comprehensive Plan.

---

[4] City of Vandalia Comprehensive Plan, Page 55.
[5] City of Vandalia Comprehensive Plan, Page 56

Planning Commission August 26, 2025                    1st Council Meeting September 15, 2025
Study Session September 2, 2025                         2nd Council Meeting October 6, 2025

## Covenants and Restrictions

The development will be served by a Homeowner's Association operating under a set of covenants and restrictions. The reserve lots and other common areas will be maintained by this Homeowner's Association.

## Development Standards[6]

The Planned Unit Development district is intended to allow for a flexible development that does not strictly adhere to the standards of one district. In this instance, the applicant proposes a development with narrow lots featuring attached townhomes.

The proposed site is divided into 33 buildable lots with each lot containing 2-3 dwelling units. There is an area reserved for passive open space, outdoor recreation, or stormwater detention.

The following development standards will apply to the proposed PUD:

1. **Permitted Uses**
   Permitted Uses shall be limited to the following:
   a. Multi-Family Residential Housing (Lots 1-32 and 34 only)
   b. Passive Parks, Open Space, Outdoor Recreation, and Natural Areas (Lot 33 only)
   c. Accessory Uses as permitted in the RSF-1 District[7]

2. **Site Development Standards**

| SITE DEVELOPMENT STANDARDS – PC 25-0011 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lots | Minimum Lot Area (Square Feet) | Minimum Lot Frontage (Feet) | Maximum Impervious Surface Coverage | Minimum Setbacks (Feet) | | | Maximum Building Height (Feet) |
| | | | | Front Yard | Side Yard (Each Side) | Rear Yard | |
| 1-32, and 34 | 4,900 | 54 | 60% | 25 | 7.5 | 10 | 25 |
| Lot 33 | 5,000 | 40 | N/A | N/A | N/A | N/A | N/A |

---

[6] All Lot Numbers and Designations (i.e., Lot 24, etc.), as well as preliminary road designations (i.e., Foxcroft Court, etc.) shall refer to the approved Preliminary Development Plan for the Copperfield Towns Subdivision, unless otherwise noted.

[7] Vandalia Zoning Code, Section 1224.01(d)(8)A.

Planning Commission August 26, 2025          1st Council Meeting September 15, 2025
Study Session September 2, 2025          2nd Council Meeting October 6, 2025

3. **Architectural Standards**

The following architectural standards shall apply to all residential dwellings constructed on Lots 1-32 and 34, inclusive, except as otherwise noted herein.

     a. No two Dwelling Units with the same elevation and exterior color package shall be permitted on either side of each other and directly across the street for each other.

     b. In all other instances, and for all other aspects relating to architectural standards, shall follow the requirements put forth in City Code 1228.03 – "Architectural Standards for Multi-Family Dwellings".

4. **Other Standards**

     a. All residential buildings shall be set back a minimum of 50 feet from the boundary of the PUD.

     b. Standards not otherwise listed as part of the Development Standards for this Planned Unit Development shall conform to the standards of the RFF Residential Four-Family district in City Code 1226.04.

     c. Improvements to the Mulberry Road right-of-way shall be installed as required by Section 1234.09(f) "Responsibility for Thoroughfare Improvements", under the supervision of the Director of Public Service.

     d. A vegetative screen shall be maintained along Airport Access Road to increase sound dampening.

**Phasing Plan / Timeline**

If approved, the applicant intends to construct this development in one phase. Primary construction would begin in Spring 2026, with a 9-month construction period planned. Once horizontal construction is complete, dwellings would be constructed as sales allow.

Planning Commission August 26, 2025                    1st Council Meeting September 15, 2025
Study Session September 2, 2025                         2nd Council Meeting October 6, 2025

## Review and Recommendation

### Planned Unit Development District Review Criteria

Recommendations and decisions on Planned Unit Development applications shall be based on consideration of the following review criteria. Not all criteria may be applicable in each case, and each case shall be determined on its own facts.[8]

1. The proposed amendment will further the purposes of this overall code;

   **Staff Comment:** Staff feels that the proposed Planned Unit Development furthers the purposes of the code.

The Planning Commission agreed with the staff comment by a vote of 3-0.

2. The proposed amendment and proposed uses are consistent with the City's adopted plans, goals and policies;

   **Staff Comment:** Staff feels that the proposed Planned Unit Development, in its current form, is consistent with the City's goals and policies.

The Planning Commission agreed with the staff comment by a vote of 3-0.

3. The proposed amendment is necessary or desirable because of changing conditions, new planning concepts, or other social or economic conditions;

   **Staff Comment:** Staff feels that the proposed Planned Unit Development is necessary to accommodate the style of home intended for this site. The townhome-style structures proposed would not be feasible in a standard zoning district.

The Planning Commission agreed with the staff comment by a vote of 3-0.

4. The public facilities such as transportation, utilities, and other required public services will be adequate to serve the proposed use;

   **Staff Comment:** Staff feels that the site has adequate access to transportation, utilities, and other required public services.

Ms. Cox and Mr. Plant agreed with the staff comment. Mr. Hussong disagreed. The Planning Commission agreed with the staff comment by a vote of 2-1.

---

[8] Vandalia Zoning Code, Section 1214.07(d) – Zoning Map Amendment Review Criteria

Planning Commission August 26, 2025                    1st Council Meeting September 15, 2025
Study Session September 2, 2025                         2nd Council Meeting October 6, 2025

5. The proposed rezoning will not adversely affect the economic viability of existing developed and vacant land within the City;

**Staff Comment:** Given the location and nature of the proposed development, Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

6. The proposed amendment is not likely to result in significant adverse impacts upon the natural environment, including air, water, noise, storm water management, wildlife, and vegetation, or such impacts will be substantially mitigated;

**Staff Comment:** Given the proposed preservation of green space as part of this development, Staff feels that the proposed Planned Unit Development complies with this review criteria.

The Planning Commission agreed with the staff comment by a vote of 3-0.

7. The proposed amendment will not constitute an instance where special treatment is given to a particular property or property owner that would not be applicable to a similar property, under the same circumstances;

**Staff Comment:** Staff feels that the proposed zoning is justified on the merits, and does not constitute special treatment.

The Planning Commission agreed with the staff comment by a vote of 3-0.

8. The proposed amendment would correct an error in the application of this Planning and Zoning Code as applied to the subject property.

**Staff Comment:** Staff feels that this criterion does not apply.

The Planning Commission agreed with the staff comment by a vote of 3-0.

Planning Commission August 26, 2025                    1st Council Meeting September 15, 2025
Study Session September 2, 2025                          2nd Council Meeting October 6, 2025

**PUD Preliminary Plan Review Criteria**

The Planning Commission shall not recommend in favor of, and City Council shall not approve, a preliminary plan for a planned unit development unless each body respectively finds that the preliminary plan does the following: [9]

A. The proposed development is consistent with the Official Thoroughfare Plan, the Comprehensive Plan and other applicable plans and policies of the City of Vandalia;

**Staff Comment:** Staff feels that the proposed Planned Unit Development, in its current form, is consistent with the City's goals and policies.

The Planning Commission agreed with the staff comment by a vote of 3-0.

B. The proposed development could be substantially completed within the period of time specified in the schedule of development submitted by the applicant;

**Staff Comment:** Staff feels that the proposed schedule of development is reasonable and achievable.

The Planning Commission agreed with the staff comment by a vote of 3-0.

C. The proposed development provides accessibility to public roads that are adequate to carry the traffic that shall be imposed upon them by the proposed development; that the number of vehicular access points to public roads from high traffic generating uses are minimized to limit the number traffic conflict points; and that the streets and driveways on the site of the proposed development shall be adequate to serve the users of the proposed development;

**Staff Comment:** Staff feels that the design of the proposed development meets this criterion.

Ms. Cox agreed. Mr. Plant and Mr. Hussong disagreed. The Planning Commission **Disagreed** with the staff comment by a vote of 1-2.

D. The proposed development shall not impose an undue burden on public services such as utilities, fire, school and police protection;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

---

[9] Vandalia Zoning Code, Section 1214.08(d) -- Planned Unit Development Review Criteria

Planning Commission August 26, 2025                     1st Council Meeting September 15, 2025
Study Session September 2, 2025                          2nd Council Meeting October 6, 2025

E.  The proposed development contains such proposed covenants, easements and other provisions relating to the proposed development standards as reasonably may be required for the public health, safety and welfare;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

F.  The proposed development shall include adequate open space, landscaping, screening and other improvements;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

G.  The location and arrangement of signs, structures, parking and loading areas, material/waste storage, walks, lighting and related facilities shall be compatible with existing and future uses both within and adjoining the proposed development;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion. A minimum 30-inch landscaped buffer, using mulch or live plantings, shall be maintained around the base of the sign on all sides.

The Planning Commission agreed with the staff comment by a vote of 3-0.

H.  The proposed development shall preserve natural features such as watercourses, trees and rock outcrops, to the degree possible, so that they can enhance the overall design of the PUD;

**Staff Comment:** Noting the areas designated as open space and the addition of the wildflower prairie area, particularly to the west, Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

Planning Commission August 26, 2025
Study Session September 2, 2025

1st Council Meeting September 15, 2025
2nd Council Meeting October 6, 2025

    I. The proposed development is designed to take advantage of the existing land contours in order to provide satisfactory road gradients and suitable building lots and to facilitate the provision of proposed services;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

    J. The proposed development shall not create excessive additional requirements for public facilities and services at public cost;

**Staff Comment:** Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

    K. The proposed development shall not involve uses, activities, layout and building designs that are detrimental to the use of both the proposed facilities and/or nearby properties by reason of excessive traffic, noise or vibration, storm water flooding, air or water emissions, objectionable glare or lack of proper regard for privacy;

**Staff Comment:** Noting that the only proposed uses are residential in character or passive open space uses, Staff feels that the proposed development complies with this review criterion.

Ms. Cox and Mr. Plant agreed with the staff comment. Mr. Hussong disagreed. The Planning Commission agreed with the staff comment by a vote of 2-1.

Mr. Hussong noted for the record that his objection was purely due to traffic concerns.

    L. The proposed development has buildings designed with sufficient architectural variety and exterior surface complexity but including elements which serve to visually unify the development;

**Staff Comment:** Given the variety of home designs and their thematic similarities, Staff feels that the proposed development complies with this review criterion.

The Planning Commission agreed with the staff comment by a vote of 3-0.

    M.  The proposed development has minimized the size of paved areas or provided adequate visual relief through the use of landscaped islands while providing adequate parking.

**Staff Comment:** As no standalone parking lots or vehicular use areas are proposed, Staff feels that this review criterion does not apply.

The Planning Commission agreed with the staff comment by a vote of 3-0.

**Recommendation**

Having reviewed the proposed Planned Unit Development district, the proposed Preliminary Plan, and the application materials provided, staff finds that the application meets the relevant criteria for approval.

Accordingly, staff recommends that Planning Commission issue a recommendation of **approval** for the establishment of the proposed Planned Unit Development, identified on a preliminary basis as Copperfield Towns, with the development standards as set forth herein.

Staff further recommends that Planning Commission issue a recommendation of **approval** for the proposed preliminary plan.

At its meeting of August 26th, 2025, the Planning Commission voted 3-0 to recommend **approval** of the proposed Planned Unit Development district and Preliminary Plan for the Copperfield Towns development.

The recommendation of the Planning Commission on both items is hereby forwarded to the September 2, 2025, Study Session for Council review.



CESO
cesoinc.com

September 12, 2025

Ben Borton
Public Service Director
City of Vandalia
333 James E Bohanan Memorial Drive
Vandalia, OH 45377

RE:     **Traffic Generation Summary for Residential Development**
        **Located north of Interstate 70 (I-70), east of Peters Pike in the City of Vandalia, OH**

Dear Mr. Borton:

### INTRODUCTION

The proposed Residential Development is located north of Interstate 70 (I-70), east of Peters Pike in the City of Vandalia, OH. The site is currently vacant land. The 11.36-acre Residential Development will consist of 87 townhouse units.

This Traffic Generation Letter has been performed in general accordance with locally accepted standards and industry practice. Based on these guidelines, the purpose of this Traffic Statement is to summarize the generated trips for the proposed Residential Development.

### SITE DESCRIPTION

The proposed Residential Development is planned to occupy approximately 11.36 acres of land at the site location. The site is surrounded by residential areas. The vicinity map, aerial view, and site plan figure are attached to this letter.

The proposed site includes one (1) stop signed controlled site access along Mulberry Road. The proposed site access are full-access and will allow for through, left-in, left-out, right-in and right-out movements.

### EXISTING ROADWAY CONDITIONS

*Mulberry Road:* Mulberry Road generally has an east/west alignment and is a two-lane undivided roadway. Mulberry Road is a Local Road and under the jurisdiction of the City of Vandalia. The posted speed limit on Mulberry Road in the vicinity of the site is 35 mph.

### SITE TRAFFIC GENERATION

Studies of similar developments throughout North America have shown that the amount of traffic generated will be functionally related to some unit of activity (i.e., square footage, housing units). Site traffic fluctuates substantially on different days and hours throughout the day. Therefore, it is imperative to select an appropriate hourly volume on which to base the design of the external roadway and site access facilities. The Weekday AM and PM Peak hours are selected based on the adjacent street traffic during these hours.



EXHIBIT

F

The Proposed Development includes the proposed use of the site as a residential development that consists of:

- 87 townhouse units

For analysis purposes, the base variable unit for the trip-generation rates was the number of housing units for the Residential Development. The Development Total Weekday Generated Traffic Volumes (Table 1) were calculated by utilizing data contained in the Institute of Transportation Engineers (ITE) *Trip Generation Manual, 11th Edition* in combination with methods outlined in the (ITE) *Trip Generation Handbook.*

The Development Total Weekday Generated Traffic Volumes are presented below in Table 1.

**Table 1**
**Development Total Weekday Generated Traffic Volumes**

| ITE Land Use Description | ITE Cat. | Size | Unit | Total Generated Trips | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Weekday | | | AM Peak Hour | | | PM Peak Hour | | |
| | | | | Tot | In | Out | Tot | In | Out | Tot | In | Out |
| Passenger Cars | | | | | | | | | | | | |
| Single-Family Attached Housing | 215 | 87 | Units | 612 | 306 | 306 | 40 | 10 | 30 | 48 | 28 | 20 |
| *ITE Cat. 215 Entering (%)/Exiting (%)* | | | | *100%* | *50%* | *50%* | *100%* | *25%* | *75%* | *100%* | *59%* | *41%* |

**CONCLUSIONS**

The proposed development is forecasted to generate 612 total trips (306 entering and 306 exiting) during a Weekday, 40 total trips (10 entering and 30 exiting) during the Weekday AM peak hour of the adjacent roadway network, and 48 total trips (28 entering and 20 exiting) during the Weekday PM peak hour of the adjacent roadway network. Based on the proposed site's trip generation, the proposed development will have a minimal impact on the surrounding roadway network. Furthermore, as the development will generate less than 200 total number of trips (entering and exiting) during the highest peak hour, a traffic impact study should not be required for this development.

Please review the above analysis and provide concurrence that the City of Vandalia will not require that a Traffic Impact Analysis (TIA) be performed for this development.

Sincerely,

Robert Matko, P.E., P.S., PTOE
Senior Engineering Manager

## ATTACHMENT A: SITE LOCATION MAP



**ATTACHMENT B: SITE AERIAL**



**ATTACHMENT C: SITE PLAN**



**ATTACHMENT D: ITE LAND CODE SHEETS**

# Single-Family Attached Housing
## (215)

**Vehicle Trip Ends vs:** Dwelling Units
**On a:** Weekday

| | |
|---|---|
| Setting/Location: | General Urban/Suburban |
| Number of Studies: | 22 |
| Avg. Num. of Dwelling Units: | 120 |
| Directional Distribution: | 50% entering, 50% exiting |

## Vehicle Trip Generation per Dwelling Unit

| Average Rate | Range of Rates | Standard Deviation |
|---|---|---|
| 7.20 | 4.70 - 10.97 | 1.61 |

## Data Plot and Equation



Fitted Curve Equation: $T = 7.62(X) - 50.48$          $R^2 = 0.94$

*Trip Gen Manual*, 11th Edition          ● Institute of Transportation Engineers

# Single-Family Attached Housing
## (215)

| | |
|---|---|
| Vehicle Trip Ends vs: | Dwelling Units |
| On a: | Weekday, |
| | Peak Hour of Adjacent Street Traffic, |
| | One Hour Between 7 and 9 a.m. |
| Setting/Location: | General Urban/Suburban |
| Number of Studies: | 46 |
| Avg. Num. of Dwelling Units: | 135 |
| Directional Distribution: | 25% entering, 75% exiting |

## Vehicle Trip Generation per Dwelling Unit

| Average Rate | Range of Rates | Standard Deviation |
|---|---|---|
| 0.48 | 0.12 - 0.74 | 0.14 |

## Data Plot and Equation



Fitted Curve Equation: T = 0.52(X) - 5.70          R²= 0.92

*Trip Gen Manual,* 11th Edition          ● Institute of Transportation Engineers

# Single-Family Attached Housing
## (215)

| | |
|---|---|
| Vehicle Trip Ends vs: | Dwelling Units |
| On a: | Weekday, |
| | Peak Hour of Adjacent Street Traffic, |
| | One Hour Between 4 and 6 p.m. |
| Setting/Location: | General Urban/Suburban |
| Number of Studies: | 51 |
| Avg. Num. of Dwelling Units: | 136 |
| Directional Distribution: | 59% entering, 41% exiting |

## Vehicle Trip Generation per Dwelling Unit

| Average Rate | Range of Rates | Standard Deviation |
|---|---|---|
| 0.57 | 0.17 - 1.25 | 0.18 |

## Data Plot and Equation



Fitted Curve Equation: T = 0.60(X) - 3.93          R²= 0.91

*Trip Gen Manual*, 11th Edition          ● Institute of Transportation Engineers

**(2)** Such use conforms to basic characteristics of the classification to which it is to be added and is more appropriate to it than to any other classification;

**(3)** Such use creates no danger to health and safety and creates no offensive noise, vibration, dust, heat, smoke, odor, glare, or other objectionable influence to an extent greater than those resulting from the uses listed in the classification to which such proposed similar use is to be added; and

**(4)** Such use creates traffic to no greater extent than uses listed in the classification to which it is to be added.

**(e) Revocation**

The Administrative Officer may revoke a similar use determination for failure to comply with all provisions of such approval provided that 30 days' notice has been given by first-class mail to the recipient of the conditional use permit prior to such revocation.

## 1214.07     Amendments to the Zoning Map and Text of This Code

**(a) Purpose**

The purpose of the code text amendment and Official Zoning Map amendment procedures is to provide a process for amending the zoning map and text of this code.

**(b) Applicability**

This section shall apply to applications for amendments to the official text of this code and to applications for the amendment of the Official Zoning Map.

**(1) Text Amendment**

Only the Administrative Officer, Planning Commission, City Council or by a petition signed by qualified electors equal in number to at least fifteen percent of the number voting in the last general election shall have the authority to initiate an amendment to the text of this code.

**(2) Amendment of Official Zoning Map**

Subject to the limitations set forth herein, an applicant, Planning Commission, or City Council are authorized to submit an application to initiate an amendment to the Official Zoning Map.

*(Amended 12-16-2020, Ordinance 20-31)*

**(c) Amendment Review Procedure**

Amendments to the text of this code and to the Official Zoning Map shall proceed according to the following procedures:

**(1) Step 1—Adoption of Motion or Submission of Application**

Planning Commission or City Council may initiate an amendment to the text of this code or to the Official Zoning Map by an affirmative vote. An applicant may initiate an amendment to the Official Zoning Map by filing an application with the Administrative Officer.



EXHIBIT
G

    (2)    **Step 2—Review by Planning Commission and Recommendation**

Within 30 days of the date that the Administrative Officer determines an application for an amendment to the Official Zoning Map is complete, or within 60 days of the date upon which City Council or the Planning Commission passes a motion to initiate a text amendment or an Amendment to the Official Zoning Map, the Planning Commission shall hold a public hearing in accordance with this chapter on the proposed amendment at a regularly scheduled meeting, or special meeting. Notice of the public hearing shall be given pursuant to Section 1214.02(c) to Section 1214.02(g).

    (3)    **Step 3—Recommendation by Planning Commission to City Council**

Within 60 days of the close of the public hearing, the Planning Commission shall recommend approval or denial to City Council based upon its application of the review standards set forth below. The failure of the Planning Commission to make a recommendation to City Council within the 60-day timeframe, shall be deemed to be a recommendation of denial.

    (4)    **Step 4—Final Decision by City Council on Proposed Amendment**

Following the receipt of Planning Commission's recommendation, City Council shall hold a public hearing in accordance with this chapter to consider the proposed amendment. Upon considering the proposed amendment, City Council shall apply the review standards set forth below to approve the amendment, approve the amendment with conditions (Official Zoning Map Amendment), or deny the amendment.

(d)  **Zoning Map Amendment Review Criteria**

Recommendations and decisions on zoning map amendment applications shall be based on consideration of the following review criteria. Not all criteria may be applicable in each case, and each case shall be determined on its own facts.

    (1)    The proposed amendment will further the purposes of this overall code;

    (2)    The proposed amendment and proposed uses are consistent with the City's adopted plans, goals and policies;

    (3)    The proposed amendment is necessary or desirable because of changing conditions, new planning concepts, or other social or economic conditions;

    (4)    The public facilities such as transportation, utilities, and other required public services will be adequate to serve the proposed use;

    (5)    The proposed rezoning will not adversely affect the economic viability of existing developed and vacant land within the City;

    (6)    The proposed amendment is not likely to result in significant adverse impacts upon the natural environment, including air, water, noise, storm water management, wildlife, and vegetation, or such impacts will be substantially mitigated;

    (7)    The proposed amendment will not constitute an instance where special treatment is given to a particular property or property owner that would not be applicable to a similar property, under the same circumstances; and

    (8)    The proposed amendment would correct an error in the application of this Planning and Zoning Code as applied to the subject property.

(e)  **Code Text Amendment Review Criteria**

Recommendations and decisions on planning and zoning code amendment applications shall be based on consideration of the following review criteria:

(1)     The proposed text amendment is consistent with the comprehensive plan, other adopted City plans, and the stated purposes of this code;

(2)     The proposed amendment is necessary or desirable because of changing conditions, new planning concepts, or other social or economic conditions; and

(3)     The proposed amendment will promote the public health, safety, and general welfare.

**(f)     Effect of Denial of Proposed Amendment to Official Zoning Map**

Following City Council's denial of an application for an amendment to the Official Zoning Map, no application for an amendment to the Official Zoning Map shall be permitted for the same property for at least six months from the date of City Council's denial. If after such six-month period, City Council denies a second application, no third application shall be considered for the same property until the date that is one year from the date of the second refusal.

## 1214.08     Planned Unit Developments

**(a)     Purpose**

The purpose of planned unit developments is to facilitate unique development within the City of Vandalia in accordance with the standards and the subdivision regulations set forth in this code.

**(b)     Applicability**

This section shall apply to the following processes pertaining to planned unit developments:

**(1)     New Planned Unit Developments**

A tract of land for a Planned Unit Development may be owned or controlled either by a single person, partnership or corporation, or by a group of individuals, partnerships or corporations. An application shall be filed by the owner(s) of all property included in the Planned Unit Development or the agent of the owner(s) with written authorization from the owners designating such agent to act on their behalf.

**(2)     Major Amendments to Approved Planned Unit Developments**

This section shall apply to major amendments to previously approved plans for planned unit developments. For the purposes of this section. An amendment shall be major if the Administrative Officer determines that it involves significant changes to the character of an approved plan. Such significant changes would include, but not be limited to:

**A.**     Any increase in housing density or nonresidential building floor area;

**B.**     Changes in the approved plan's boundaries;

**C.**     Significant changes in the location, area, or character of open space, or perimeter screening for nonresidential properties;

**D.**     Changes in signage that are not permitted under the underlying zoning;

**E.**     The development of a parcel of unimproved land;

**F.**     The development of improved land in which existing structure(s) are substantially removed or significantly altered for purpose of constructing one or more new structures or major exterior remodeling; or

**G.**     Changes to a property consisting of more than five acres.

**(3)     Minor Amendments to Approved Planned Unit Developments**

This section shall apply to applications for minor amendments to previously approved plans for planned unit developments, which shall be characterized by any change to an approved plan which the Administrative Officer does not deem to be major.


EXHIBIT

H

(1)   The proposed text amendment is consistent with the comprehensive plan, other adopted City plans, and the stated purposes of this code;

(2)   The proposed amendment is necessary or desirable because of changing conditions, new planning concepts, or other social or economic conditions; and

(3)   The proposed amendment will promote the public health, safety, and general welfare.

**(f)   Effect of Denial of Proposed Amendment to Official Zoning Map**

Following City Council's denial of an application for an amendment to the Official Zoning Map, no application for an amendment to the Official Zoning Map shall be permitted for the same property for at least six months from the date of City Council's denial.  If after such six-month period, City Council denies a second application, no third application shall be considered for the same property until the date that is one year from the date of the second refusal.

## 1214.08   Planned Unit Developments

**(a)   Purpose**

The purpose of planned unit developments is to facilitate unique development within the City of Vandalia in accordance with the standards and the subdivision regulations set forth in this code.

**(b)   Applicability**

This section shall apply to the following processes pertaining to planned unit developments:

**(1)   New Planned Unit Developments**

A tract of land for a Planned Unit Development may be owned or controlled either by a single person, partnership or corporation, or by a group of individuals, partnerships or corporations.  An application shall be filed by the owner(s) of all property included in the Planned Unit Development or the agent of the owner(s) with written authorization from the owners designating such agent to act on their behalf.

**(2)   Major Amendments to Approved Planned Unit Developments**

This section shall apply to major amendments to previously approved plans for planned unit developments. For the purposes of this section. An amendment shall be major if the Administrative Officer determines that it involves significant changes to the character of an approved plan.  Such significant changes would include, but not be limited to:

A.   Any increase in housing density or nonresidential building floor area;

B.   Changes in the approved plan's boundaries;

C.   Significant changes in the location, area, or character of open space, or perimeter screening for nonresidential properties;

D.   Changes in signage that are not permitted under the underlying zoning;

E.   The development of a parcel of unimproved land;

F.   The development of improved land in which existing structure(s) are substantially removed or significantly altered for purpose of constructing one or more new structures or major exterior remodeling; or

G.   Changes to a property consisting of more than five acres.

**(3)   Minor Amendments to Approved Planned Unit Developments**

This section shall apply to applications for minor amendments to previously approved plans for planned unit developments, which shall be characterized by any change to an approved plan which the Administrative Officer does not deem to be major.

(4) **Modification to Design Standards**

This section shall apply to applications for the modification of design standards applicable to planned unit developments as set forth in Chapter 1222: Planned Unit Developments (PUDs).

(5) **Incidental Change to Approved Planned Unit Development**

This section shall apply to incidental changes to previously approved plans for planned unit developments, which shall be characterized as changes to an approved plan, which shall be characterized as changes to an approved plan which include the location of utilities, roadbeds, drainage lines and building footprints that do not materially alter the approved plan.

(c) **Planned Unit Development Review Procedures**

The review of applications for planned unit developments and amendments to approved planned unit developments shall proceed as follows:

(1) **Step 1—Pre-Application Meeting**

An applicant is encouraged to engage in informal discussions with the Administrative Officer and City staff prior to the submission of an application for a planned development or an amendment to an approved planned unit development. The purpose of these meetings is to discuss the development concept's adherence to the applicable standards and subdivision regulations. The applicant may present a conceptual plan during the pre-application meeting for staff review and comment. It is understood that any statement or representation by the Administrative Officer or City staff shall not be binding.

(2) **Step 2—Application**

Following a pre-application meeting, the applicant shall submit an application together with plans or proposed amendments to approved plans, such supporting materials as set forth in this chapter, and the required fees to the Administrative Officer for confirmation of completeness pursuant to the standards set forth herein and transmittal to the Planning Commission for review. Upon receipt of such application materials, the Administrative Officer shall review all materials to decide of completeness and also verify the processes that apply to the application and communicate such processes to the applicant.

(3) **Step 3—Review of Plans or Amendments to Approved Plan**

Within 30 days following the determination that an application is complete, the Administrative Officer and City staff shall review all plans and materials, and shall return the plans and materials to the applicant with comments. After review of the preliminary plan, and as applicable the final plan, the applicant may submit corrected plans, in quantities as specified by the Administrative Officer, to the Planning Commission for its consideration. To the extent any amendment to an approved plan is submitted, and the Administrative Officer or his or her designee determines that such amendment is an incidental change, then the Administrative Officer, or such designee may make a final determination on such incidental change based upon the review standards set forth below.

(4) **Step 4—Review and Recommendation by Planning Commission**

Following review of a preliminary plan, and as applicable a final plan, the Planning Commission shall hold a public hearing on such plans and may recommend to City Council disapproval or approval of such plans. The Planning Commission shall also review all applications for minor or major amendments to approved plans, and proposed modifications to standards for planned unit developments. To the extent that an application pertains to a minor amendment to an approved plan or a proposed modification to standards, the Planning Commission shall make a final determination based upon the applicable review standards set forth below. Notice of such public hearing shall be delivered as provided in Section 1214.02(c) to Section 1214.02(g).

(5) **Step 5—Review and Determination by City Council**

After making a recommendation on any plan or major amendment to an approved plan, the Planning Commission shall certify one copy of such plan to City Council for a public hearing and final determination in accordance with the applicable review standards below. Action on a final development plan may occur concurrently with action on the subdivision plat and shall follow the procedures specified in Section 1214.09. In approving any preliminary plan, final plan, or major amendment to an approved plan, City Council may prescribe appropriate conditions and safeguards in conformity with this code. Notice of such public hearing shall be delivered as provided in Section 1214.02(c) to Section 1214.02(g).

(d) **Review Criteria**

The following shall establish the review criteria for the various review procedures established for PUDs.

(1) **Planned Unit Development Preliminary Plans**

The Planning Commission shall not recommend in favor of and City Council shall not approve a preliminary plan for a planned unit development unless each body respectively finds that the preliminary plan:

A. Is consistent with the Official Thoroughfare Plan, the Comprehensive Plan and other applicable plans and policies of the City of Vandalia;

B. Could be substantially completed within the period of time specified in the schedule of development submitted by the applicant;

C. Provides accessibility to public roads that are adequate to carry the traffic that shall be imposed upon them by the proposed development; that the number of vehicular access points to public roads from high traffic generating uses are minimized to limit the number traffic conflict points; and that the streets and driveways on the site of the proposed development shall be adequate to serve the users of the proposed development;

D. Shall not impose an undue burden on public services such as utilities, fire, school and police protection;

E. Contains such proposed covenants, easements and other provisions relating to the proposed development standards as reasonably may be required for the public health, safety and welfare;

F. Shall include adequate open space, landscaping, screening and other improvements, and;

    **G.** The location and arrangement of signs, structures, parking and loading areas, material/waste storage, walks, lighting and related facilities shall be compatible with existing and future uses both within and adjoining the proposed development;

    **H.** Shall preserve natural features such as watercourses, trees and rock outcrops, to the degree possible, so that they can enhance the overall design of the PUD;

    **I.** Is designed to take advantage of the existing land contours in order to provide satisfactory road gradients and suitable building lots and to facilitate the provision of proposed services;

    **J.** Shall not create excessive additional requirements for public facilities and services at public cost;

    **K.** Shall not involve uses, activities, layout and building designs that are detrimental to the use of both the proposed facilities and/or nearby properties by reason of excessive traffic, noise or vibration, storm water flooding, air or water emissions, objectionable glare or lack of proper regard for privacy;

    **L.** Has buildings designed with sufficient architectural variety and exterior surface complexity but including elements which serve to visually unify the development; and

    **M.** Has minimized the size of paved areas or provided adequate visual relief through the use of landscaped islands while providing adequate parking.

**(2) Planned Unit Development Final Development Plans**

Prior to Planning Commission recommending in favor of or City Council approving a final development plan for a planned unit development each body shall find that the final development plan:

    **A.** Conforms to and is consistent with the approved preliminary plan;

    **B.** Complies with any and all conditions, that may have been imposed in the approval of the preliminary plan; and

    **C.** Complies with the requirements of this Section and Chapter 1222: Planned Unit Developments (PUDs).

**(3) Major Amendment to Approved PUD Plans**

Planning Commission shall not recommend in favor of and City Council shall not approve a major amendment to an approved plan, unless each body makes the findings set forth for preliminary development plans and final development plans, as applicable, above.

**(4) Minor Amendments to Approved PUD Plans**

Planning Commission shall consider all other amendment requests, which it determines to be in substantial agreement with the approved preliminary plan or final development plan to be minor. In determining whether to grant a minor amendment to an approved plan for a planned unit development, Planning Commission shall apply the standards set forth for preliminary development plans and final development plans, as applicable, above.

**(5) Incidental Changes to Approved Plans**

At any time after the approval of a preliminary plan or final development plan, the Administrative Officer, or his or her designee, may approve incidental change of a technical nature to the location of utilities, roadbeds, drainage lines and building footprints that do not materially alter the approved plan.

(e) **Appeal of Minor Amendments**

    (1)    If the Planning Commission denies an application for a minor amendment to an approved plan, then the applicant may appeal the decision to City Council. The appeal shall be filed within 10 days of Planning Commission's final decision.

    (2)    City Council shall hear any petition to appeal filed under this section no later than 45 days after the final decision of the Planning Commission. City Council shall decide whether to approve or deny the petition to appeal based upon its application of the applicable review criteria above and as set forth in Section 1214.12(c). Notice of the public hearing shall be transmitted in accordance with Section 1214.02(c) to Section 1214.02(g).

*(Amended 12-16-2020, Ordinance 20-31)*

(f) **Filing of Approved Plan and PUD Designation**

    (1)    The approved preliminary plan shall be signed and dated by the Administrative Officer and filed in the office of the City Manager. Thereafter, there shall be no change, modification or deviation from the approved preliminary plan, unless the procedures to amend approved plans, as defined in this chapter, are followed.

    (2)    The Official Zoning Map shall be amended at this time to identify the subject properties as being zoned PUD.

(g) **Time Limitations of Approvals**

The time period of validity for approved plans shall be as follows:

    (1)    **Preliminary Development Plan**

    The preliminary plan approval and overlay zoning shall be null and void if the approved completion schedule of any section is delayed more than 12 consecutive months. Council may approve schedule extensions that do not exceed 12 months total if requested by the applicant prior to the plan becoming void.

    (2)    **Final Development Plan**

    If construction has not commenced pursuant to an approved final development plan within 12 months after its approval, the final development plan approval shall lapse. An extension, authorized by the City Council for good cause shown, may be granted.

## 1214.09    Major Subdivisions

(a) **Purpose**

The purpose of the City of Vandalia subdivision review and approval is to facilitate the subdivision of more than five parcels of land in accordance with the regulations set forth herein.

(b) **Applicability**

This section shall apply to any subdivision of land that is not a minor subdivision of land as described under Section 1214.10, below. A preliminary plat shall not be required for a single-phased development where a plat or replat includes the development in its entirety; provided however, a preliminary plat shall be required for a planned unit development.

(c) **Subdivision Approval Procedures**

The subdivision of land shall proceed as follows:



333 James E. Bohanan Memorial Drive
Vandalia, OH 45377

call 937.898.3750
fax 937.415.2319

DDC Management
Attn: Robert Ballinger
Coolidge Wall Co., LPA
33 W. First Street, Suite 200
Dayton, Ohio 45402

October 9, 2025

### <u>NOTICE OF DECISION ON PLANNED UNIT DEVELOPMENT</u>

To: Robert Ballinger
Decision Date: October 6, 2025
Case Number: PC 25-0011
Existing Zoning: A - Agriculture
Proposed Zoning: PUD – Planned Unit Development (Residential)
Location(s): 3330 Mulberry Road

Dear Applicant:

At the City Council meeting held on the Decision Date indicated above, Ordinance 25-22 approving the proposed Planned Unit Development District and Preliminary Plan for the Copperfield Towns subdivision failed by a vote of 2-4. As a result, the application was **Denied.**

A copy of this letter and the failed ordinance will be placed in the case file.

Please feel free to reach out to my office, should you have any questions regarding this matter. I may be reached by phone at (937) 415-2301, or via e-mail at mhammes@vandaliaohio.org. Please note that we cannot offer legal advice.

Sincerely,

Michael Hammes, AICP
*City Planner*





EXHIBIT

I

CITY OF VANDALIA

MONTGOMERY COUNTY, OHIO

**ORDINANCE 25-22**

**AN ORDINANCE APPROVING A PLANNED UNIT DEVELOPMENT PRELIMINARY DEVELOPMENT PLAN AND ASSOCIATED ZONING MAP CHANGE ON LAND GENERALLY LOCATED AT 3330 MULBERRY ROAD**

**WHEREAS,** the proposed PUD Preliminary Plan for 3330 Mulberry Road consists of approximately 11 acres of land being described by the Montgomery County Auditor as Parcel Number B02 00624 0001 located at 3330 Mulberry Road; and

**WHEREAS,** the property has a zoning classification of Agriculture (A) and a Future Land Use Map designation of Medium Density Residential; and

**WHEREAS,** the Applicant has requested a Planned Unit Development Preliminary Plan to permit an 87-unit residential townhome development, passive open space uses, and related amenities, said subdivision being referred to on a preliminary basis as the Copperfield Towns Subdivision; and

**WHEREAS,** the 87 units will be located on 34 individual parcels; and

**WHEREAS,** the Planning Commission held a public hearing on August 26th, 2025, following which they recommended approval of the Preliminary Development Plan and associated zoning map change;

**NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF VANDALIA, MONTGOMERY COUNTY, OHIO THAT:**

**Section 1.** The Preliminary Development Plan known as the Copperfield Towns Subdivision dated January 25th, 2022, attached hereto and incorporated herein as Exhibit A, is hereby approved.

**Section 2.** The Development Standards for the Copperfield Towns Subdivision, attached hereto and incorporated herein as Exhibit B, shall apply to all parcels of the Copperfield Towns Subdivision, unless amended by legislative action of the Vandalia City Council.

**Section 3.** Pursuant to Section 1214.08(f)(2) of the Vandalia Zoning Code, the Official Zoning Map of the City of Vandalia is amended to identify the subject property as being zoned PUD.

**Section 4.** It is hereby found and determined that all formal actions of this Council concerning and relating to the passage of this legislation were adopted in an open meeting of this Council and that all deliberations of this Council and of any of its Committees that resulted in such formal action were taken in meetings open to the public and in conformance with all legal requirements including Section 121.22 of the Ohio Revised Code.

**Section 5.** This ordinance shall take full force and effect from and after the earliest period allowed by law.

Passed this 6th day of October, 2025.

APPROVED:

_____
Richard Herbst, Mayor

ATTEST:

_____
Kurt E. Althouse
Clerk of Council





PRELIMINARY PLAN
# COPPERFIELD TOWNS
SECTIONS 20, TOWN 3, RANGE 6E M.Rs.
CITY OF VANDALIA
MONTGOMERY COUNTY, OHIO



DDC MANAGEMENT, LLC,

COPPERFIELD TOWNS

EXISTING CONDITIONS PLAN





UTILITY PLAN

DDC MANAGEMENT, LLC.

COPPERFIELD
TOWNS

CESO



DDC MANAGEMENT, LLC.

COPPERFIELD
TOWNS

SITE LANDSCAPE PLAN



ORDINANCE 25-22

EXHIBIT B

Development Standards

The following development standards will apply to the proposed PUD[1]:

1. **Permitted Uses**

   Permitted Uses shall be limited to the following:
   a. Multi-Family Residential Housing (Lots 1-32 and 34 only)
   b. Passive Parks, Open Space, Outdoor Recreation, and Natural Areas (Lot 33 only)
   c. Accessory Uses as permitted in the RSF-1 District[2]

2. **Site Development Standards**

| SITE DEVELOPMENT STANDARDS – PC 25-0011 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lots | Minimum Lot Area (Square Feet) | Minimum Lot Frontage (Feet) | Maximum Impervious Surface Coverage | Minimum Setbacks (Feet) | | | Maximum Building Height (Feet) |
| | | | | Front Yard | Side Yard (Each Side) | Rear Yard | |
| 1-32, and 34 | 4,900 | 54 | 60% | 25 | 7.5 | 10 | 25 |
| Lot 33 | 5,000 | 40 | N/A | N/A | N/A | N/A | N/A |

---

[1] All Lot Numbers and Designations (i.e., Lot 24, etc.), as well as preliminary road designations (i.e., Street A, etc.) shall refer to the approved Preliminary Development Plan for the Copperfield Towns Subdivision, unless otherwise noted.
[2] Vandalia Zoning Code, Section 1224.01(d)(8)A.

3. **Architectural Standards**

The following architectural standards shall apply to all residential dwellings constructed on Lots 1-32 and 34, inclusive, except as otherwise noted herein.

    a. No two Dwelling Units with the same elevation and exterior color package shall be permitted on either side of each other and directly across the street for each other.

    b. In all other instances, and for all other aspects relating to architectural standards, shall follow the requirements put forth in City Code 1228.03 – "Architectural Standards for Multi-Family Dwellings".

4. **Other Standards**

    a. All residential buildings shall be set back a minimum of 50 feet from the boundary of the PUD.

    b. Standards not otherwise listed as part of the Development Standards for this Planned Unit Development shall conform to the standards of the RFF Residential Four-Family district in City Code 1226.04.

    c. Improvements to the Mulberry Road right-of-way shall be installed as required by Section 1234.09(f) "Responsibility for Thoroughfare Improvements", under the supervision of the Director of Public Service.

    d. A vegetative screen shall be maintained along Airport Access Road to increase sound dampening.

**3330 Mulberry Road**
**Vandalia, OH 45377**

**Traffic**

In the Planning Commission meeting of September 23, 2025, Mr. Hammes pointed out this development would have a single entrance from Mulberry Road. I understand the applicant requested a waiver from Mulberry Rd improvements, the Ordinance as proposed in Exhibit B to the General Plan; Development Standards section 4(c) states, "Improvements to the Mulberry Rd right of way shall be installed as required by Section 1234.09(f), 'Responsibility for Thoroughfare Improvements', under the supervision of the Director of Public Service".

The question is whether the road is adequate to carry the traffic that shall result from the new development. I do NOT believe the road will be adequate to handle the increased traffic load, and I do not agree that there should be only one entrance and exit. If cars are lined up to leave the development and emergency vehicles need to enter, they will have difficulty. **This is a public welfare and safety issue.**
I agreed with **Mr. Plant and Mr. Hussong**, of the **Planning Commission**, on this item that the road is not adequate.
Our Code 1222.01 states that **"An effective use of land to facilitate the more efficient arrangement of buildings, traffic circulation systems and utilities"**

**Noise**

Residents have, not only, brought up the excessive traffic, but also the noise level created by this development. This would also be a huge issue for your buyers if a noise wall was not constructed to help with the interstate noise. Along with the noise level, residents have also spoken of privacy issues. At the same PC meeting, Mr. Al Machuca (resident) expressed concerns that this development would not provide anywhere for the children (of your development) to play. This could result in them going out onto Mulberry or into the Copperfield development. This could very well be a public safety concern for drivers on Mulberry and the children playing.

**Layout and Design**

The same Code states our purpose for a PUD is "a harmonious design among the various elements and uses within the development while mitigating any **potential negative impact on surrounding properties; and increased attention to architectural design that will contribute to the overall character of Vandalia. The layout and design are detrimental to the use of both the development and nearby properties because they will result in excessive traffic, noise or vibration, flooding, air or water emissions, objectionable glare or lack of proper regard for privacy.**

Mr. Plant asked out how the units would face. Mr. Bills confirmed that all homes would face toward the internal streets within the development. That means what will be seen from Mulberry Road will the BACKS of the units.

**Parking**

These units have one garage per unit. A 2-3 person group living in one unit will naturally pose parking issues. Parking on the street not only hinders traffic flow for fellow residents, but also often inhibits emergency vehicles from moving where they need to. I would like to make sure that Section 1222.06(g) of Development Standards is followed. "Adequate off-street parking, loading, and stacking spaces shall be provided in a manner that complies with Chapter 1234: Parking, Access, and Mobility Standards."

**EXHIBIT**
**J**

*Copy – Blakesly*

First, I would like to thank the Planning Commission for doing their due diligence by reviewing this Copperfield Town Development PUD.

I would like to thank all of those citizens who took the time to email the city council and staff. Many of you articulated well by presenting organized thoughts which lead to your opinion on the matter. Some presented facts while others presented opinions based on speculative possibilities and emotional conjecture.

Hopefully, I can dispel one of the myths that some wrote about.
The school district did not install trailers at Smith because the schools are "over crowded." They did it because they reorganized the grade structure at each building. According to my source, Smith could not accommodate all the needed classrooms for the grades housed there, therefore re-installed the trailers.

*Appreciate MR. Ballinger Lapology statement*

Many of you wrote emails expressing your concerns stating that some of you felt Council was/*or is* being "Bullyed" into a decision by the developer by threatening a law suit if we did not capitulate to their will by voting yes. Conversely, many also cited in the same email, which clearly was directly pointed out in a threatening tone, the potential for legal action from the citizens in the neighboring development by citing Ohio Revised Code 713. I view this also as bullying.

I do not take kindly to threatening tones *from* for either side. I do not make my decision on whether or not we are going to get sued ever time I make a decision. If that was the case then we would not be making any decisions. However, there is that possibility if we do not follow procedures as spelled out in our code. That is why we analysis items like this with certain criteria.

Regardless of your position or how you stated it, I heard each one of your concerns and your opinions. I did take those into consideration during my decision making. However, just like the planning commission I (and we) look at the facts of the matter. I (we) gather all the pertinent information and weigh the facts from both sides of the subject. I use a systematic approach to make my decision along with following our criterion based on fact. This takes out the speculative public perception and emotional component of the decision making. *(actually no)*

*I concur with C.M Doogen – from my observation, I didn't see any substantial change from the last desig*

With that said, of the 13 criteria of the PUD review procedures, I am in disagreement with the Planning Commission on item 11. *Furthermore,* In my opinion, "the layout and building design is a detriment to the current surrounding neighborhood because it should be of like kind *and consistent,* which is single family homes." Additionally, the layout and design is a detriment because of increased traffic on the current road.

Therefore I will be casting a no vote for the above stated reasons.

*FAils 4-2*



**EXHIBIT**

**K**